<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ELIZABETH M., | Civil Action No. 25-04259 (SDW) |
| Plaintiff, |  |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | May 29, 2026 |
| Defendant. |  |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Elizabeth M.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Jack Russak's ("ALJ Russak") denial of Plaintiff's claim for supplemental security income ("SSI") under the Social Security Act (the "Act"). (D.E. 1.)  This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Venue is proper under 42 U.S.C. § 405(g).  This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

## I.    <u>PROCEDURAL AND FACTUAL BACKGROUND</u>

### A.  **Factual Background**

---

[1] Plaintiff is identified only by her first name and last initial in this opinion, pursuant to Standing Order 2021-10, issued on October 1, 2021, available at https://www.njd.uscourts.gov/sites/njd/ files/SO21-10.pdf.

1

Plaintiff was born on April 25, 1979 and alleges that she became disabled on January 17, 2023 (the "alleged onset date") at forty-three years old.[2]  (Administrative Record ("R.") 36.) Plaintiff alleges that she is disabled due to her medical history of chronic kidney disease stage 3, hypertension, major depressive disorder, panic disorder, bilateral knee degenerative joint disease and osteoarthritis, bilateral hip trochanteric and osteoarthritis, lumbar facet syndrome and spondylosis, primary headache disorder, renal stones, proteinuria, and hyperlipidemia.  ( *See* R. 19–20.)

Prior to the alleged onset date, Plaintiff complained of bilateral knee pain and received various treatments, including injections and knee surgery in 2016.  (R. 334.)  The administrative record demonstrates multiple office visits to treating physicians for medication management, the administration of x-rays, magnetic resonance imaging ("MRIs"), and injections from 2021 through 2023.  (*See*, *e.g.*, R.  391, 394, 396, 398 (medication management); 335, 350, 361, 363, 504, 507, 511 (x-rays); 348, 354, 356, 497, 511 (MRIs); 358–60, 374 (injections).  Additionally, from January 2021 to December 2023, Plaintiff's treating physicians noted depressive disorder, panic attacks, anxiety, and sleep disturbance.  (*See*, *e.g.* R. 382, 388, 401, 405, 408, 411, 414, 417, 426, 518, 521, 531.)

From January through March 2023, Plaintiff visited also Dr. Ravi Takoo who noted headaches, migraines, and insomnia.  (R. 376, 379, 489, 491.)  Plaintiff reported that her headaches occurred four to five times per week and last one hour with photophobia, lightheadedness, and low back pain.  (*Id.*)  In April 2023 and May 2023, Dr. Takoo noted a decrease to two to three severe headaches per week with photophobia, lightheadedness, and low back pain.  (R. 493, 497.)

## B.  Procedural History

---

[2]  At the administrative hearing, Plaintiff amended the alleged onset date from June 1, 2021 to January 17, 2023.  (R. 42.)

On January 17, 2023, Plaintiff applied for SSI, alleging disability beginning on June 1, 2021.  (R. 17.)  The Commissioner initially denied Plaintiff's claim on May 2, 2023, and upon reconsideration on July 21, 2023.  (R. 95, 101.)  On March 8, 2024, ALJ Russak held an online video administrative hearing and on April 24, 2024, he issued a written decision finding that Plaintiff was not disabled.  (R. 14–33.)  On March 17, 2025, the Appeals Council denied review (R. 1–6), making the ALJ's decision the Commissioner's final decision.  *See* 20 C.F.R. § 406.1481; 42 U.S.C. § 405(g).  Plaintiff then filed the instant appeal in this Court, and the parties timely completed briefing.

1.  <u>Administrative Hearing</u>

Plaintiff was represented by counsel at the administrative hearing held on March 8, 2024. (R. 36.)  ALJ Russak heard testimony from Plaintiff and an impartial vocational expert Victor Alberigi.  (*See generally* R. 34–64.)  ALJ Russak began the hearing by questioning Plaintiff as to the physical or mental impairments comprising her claim. (R. 42–53.)  Plaintiff testified as to how the alleged physical and mental impairments affect her daily living.  (*Id.*)  Plaintiff's counsel then briefly questioned Plaintiff on how her impairments impact her sleep schedule.  (R. 53–54.)

After hearing from Plaintiff, ALJ Russak questioned and heard testimony on job classification and availability from VE Alberigi. VE Alberigi classified Plaintiff's past relevant work consistent with the classifications in the Dictionary of Occupational Titles ("DOT") and assigned each a Specific Vocational preparation ("SVP") level.[3]  (R. 55–57.)  Then, ALJ Russak presented VE Alberigi with a hypothetical exhibiting different limitations and asked him to determine whether an individual with Plaintiff's age, education, and work experience could

---

[3] "The DOT is a vocational dictionary that lists and defines all jobs available in the national economy and specifies what qualifications are needed to perform each job." *Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014) (quoting *McHerrin v. Astrue*, No. 09-2035, 2010 WL 3516433, at *3 (E.D. Pa. Aug. 31, 2010)). SVP levels "measure the skill level necessary to perform a particular job," ranging from level 1 to level 9. *Id.*

perform Plaintiff's past work notwithstanding said limitations. (R. 57–58.) Additionally, the ALJ asked VE Alberigi to identify jobs in the national economy that Plaintiff could perform with each hypothetical. (R. 58–63.) In response to the hypothetical, VE Alberigi opined that an individual with Plaintiff's residual functional capacity ("RFC") and past relevant work experience, could perform sedentary jobs. (*Id.*). Such an individual could perform the job as telemarketer, document clerk, envelope addresser, and a surveillance system monitor. (*Id.*)

   2.  ALJ Decision

On April 24, 2024, ALJ Russak issued a written opinion concluding Plaintiff was not under a disability, as defined in the Social Security Act, since January 17, 2023. To determine whether Plaintiff was disabled, ALJ Russak considered the five-step sequential evaluation process. At step one, ALJ Russak concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 17, 2023. (R. 19.)

At step two, ALJ Russak found that Plaintiff had the following severe impairments: chronic kidney disease stage 3, hypertension, major depressive disorder, panic disorder, bilateral knee degenerative joint disease and osteoarthritis, bilateral hip trochanteric and osteoarthritis, lumbar facet syndrome and spondylosis, and primary headache disorder. (*Id.*) However, Plaintiff's renal stones, proteinuria, and hyperlipidemia were found to be non-severe. (R. 19–20.) ALJ Russak reached this conclusion after finding that such medical conditions did not more than minimally affect Plaintiff's ability to perform basic work activities. (*Id.*)

At step three, ALJ Russak concluded Plaintiff's impairments, individually or in combination, did not meet or medically equal the severity of those listed in Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Appendix"). (R. 20–22.) For Plaintiff's back and joint conditions, ALJ Russak considered Listings 1.15 and 1.18 but found that she did not meet

the requirements for either Listing because she did not require the use of an assistive device or devices. (*Id.*)  For Plaintiff's chronic kidney disease, ALJ Russak found that Plaintiff did not meet the requirements for Listing 6.03 because she did not have chronic hemodialysis or peritoneal dialysis. (*Id.*)  As to Plaintiff's mental impairments, ALJ Russak concluded that Plaintiff's did not satisfy the Paragraph B criteria and thus, she failed to meet the requirements for Listings 12.04, 12.06, and 12.15. (*Id.*)  Specifically, ALJ Russak discussed Plaintiff's medical records and found that Plaintiff's mental impairments did not rise to the level of an extreme limitation or at least two marked limitations in a broad area of functioning. (*Id.*)

At step four, ALJ Russak concluded that Plaintiff cannot perform any past relevant work. (R. 27.)  However, ALJ Russak concluded that Plaintiff can perform sedentary work as defined in 20 C.F.R. 416.967(a), except Plaintiff can occasionally push and pull with the upper extremities. (R. 22.)  Additionally, Plaintiff can perform SVP 1 to 3 jobs, defined as having occasional decision making required and occasional changes in the work setting. (*Id.*).  Based on Plaintiff's age, education, work experience, and RFC, ALJ Russak also concluded that Plaintiff could perform jobs existing in significant numbers in the national economy at step five. (R. 28.)  Specifically, ALJ Russak found that Plaintiff could work as a document clerk, envelope addresser, or a surveillance system monitor. (R. 28–29.)  Thus, the ALJ concluded Plaintiff was not disabled under the Act during the relevant period. (R. 29.)

## II.   LEGAL STANDARD

### A.  Standard of Review

When reviewing applications for Social Security disability benefits, this Court exercises plenary review of legal issues decided by the ALJ and upholds factual findings if supported by substantial evidence. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024); 42

5

U.S.C. § 1383(c)(3); 42 U.S.C. § 405 (g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive.").  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).    Under the substantial evidence standard, the threshold for evidentiary sufficiency is not high.  *Id.*  An ALJ's decision cannot be set aside merely because this Court "acting *de novo* might have reached a different conclusion."  *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986).  So long as the ALJ's decision sufficiently develops the record and explains its findings to permit meaningful review, the ALJ need not "use particular language or adhere to a particular format" when conducting the analysis.  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

### B.  The Five-Step Disability Test

To make a disability determination, the ALJ follows a five-step, sequential analysis.  20 C.F.R. § 404.1520(a); *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–03 (3d Cir. 2019).  The ALJ determines whether the claimant:  first, is currently engaged in substantial gainful activity ("SGA"); second, has a "severe" and "medically determinable" impairment; and third, has an impairment, or combination thereof, that is equal to or exceeds one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Appendix").  20 C.F.R. §§ 416.920(a)(4)(i)–(iii).  Prior to reaching the fourth step, the ALJ considers the claimant's residual functional capacity ("RFC"), which is "the most [the claimant] can still do despite [his or her] limitations," as it relates to meeting "the physical, mental, sensory, and other requirements of work. *Id.* §§ (a)(4)(iv), 416.945(a)(4).  Then, at step four, the ALJ determines whether the claimant can

6

still do his or her past relevant work[4] by comparing his or her RFC to the "physical and mental demands" of that work. *Id.* §§ (a)(4)(iv), (f). Lastly, at step five the ALJ decides whether the claimant "can make an adjustment to other work" considering his or her RFC, age, education, and work experience. *Id.* § (a)(4)(v). The claimant bears the burden of proof at all steps except step five, where the burden is on the Commissioner. *Hess*, 931 F.3d at 201.

## III.    DISCUSSION

On appeal, Plaintiff seeks reversal or remand of the Commissioner's decision. (D.E. 9 ("Mov. Br.") at 34.) Plaintiff contends that the ALJ relied upon factual and legal errors in finding that Plaintiff was not disabled. (*Id.*) Specifically, Plaintiff asserts that the ALJ erred in finding that: (1) Plaintiff's other conditions were non-severe; (2) Plaintiff could perform sedentary level work; and (3) there were sufficient jobs available to Plaintiff despite her functional limitations. (Mov. Br. at 22.)

As a preliminary matter, this Court notes that Plaintiff's arguments amount to a request to reweigh the evidence and review the Commissioner's findings and decision de novo. However, this Court's review of the ALJ decision is "quite limited." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Despite Plaintiff's assertions that the ALJ failed to weigh the evidence correctly, this Court's role is not to re-weigh the evidence. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); *see also Michael Edward Davern v. Comm'r of Soc. Sec.*, 660 F. App'x 169, 174 (3d Cir. 2016) ("A court may not weigh the evidence or substitute its own findings for the Commissioner's."). The question before this Court is whether ALJ Russak's decision was supported by substantial evidence.

---

[4] Past relevant work is work performed by the claimant "within the past five years that was substantial gainful activity and that lasted long enough" for the claimant to learn to do it. 20 C.F.R. § 416.960(b)(1)(i).

7

Upon review, ALJ Russak's decision that Plaintiff's conditions were non-severe was supported by substantial evidence. Plaintiff argues that the ALJ failed to properly weigh evidence from her treating physicians and failed to consider Plaintiff's subjective complaints. However, an ALJ can "accept some medical evidence and reject other evidence, provided that he provides an explanation for discrediting the rejected evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).

Here, this Court is satisfied with ALJ Russak's analysis of Plaintiff's conditions and will not reweigh the evidence. Contrary to Plaintiff's assertions, the ALJ properly considered evidence from her treating physicians and Plaintiff's subjective complaints, in addition to statements provided by Plaintiff's mother. Specifically, the ALJ examined the medical opinions and explained that the medical record did not support the extreme limitations described by Plaintiff and her mother. (R. 22–27.) Therefore, the ALJ provided a rationale regarding the persuasiveness of the medical evidence and a specific explanation as to why he discounted Plaintiff's subjective complaints.

Plaintiff also contends that the ALJ erred in determining her RFC because ALJ Russak failed to address Plaintiff's absenteeism and the lack of available jobs due to her absenteeism. ALJ Russak has the exclusive responsibility of making an RFC determination and examines "all of the relevant medical and other evidence" to do so. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). Further, "[t]he law is clear ... that the opinion of a treating physician does not

8

bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir. 2011).  Plaintiff argues that the ALJ erred in making his RFC determination because ALJ Russak failed to properly address absenteeism.  Plaintiff asserts that she would actually be 16-25% off task, rather than 5% off task as stated by ALJ Russak.  The Court rejects this argument as it is another request for this Court to reweigh the evidence and reach a different conclusion.  Moreover, ALJ Russak considered the medical records and Plaintiff's subjective complaints in the RFC analysis portion of his opinion and concluded that Plaintiff would be allowed off task 5% of the day.  The ALJ's analysis of the medical reports, as he compared them with the other evidence in the record, demonstrates that substantial evidence supports his RFC determination.

Plaintiff further argues that the RFC determination is incorrect because the ALJ failed to address conflicts between the VE's testimony and the DOT.  Specifically, Plaintiff alleges that the VE's testimony at her hearing conflicted with the DOT because the job descriptions are out of date and the ALJ did not address the erosion of available jobs when the RFC relies on a sit/stand option. First, Plaintiff's argument concerning the erosion of available jobs is misplaced because the RFC does not include a sit/stand option.  Next, neither Plaintiff nor her counsel challenged VE Alberigi on the alleged conflicts during the hearing or otherwise identified any apparent inconsistency between the VE's testimony and the DOT.  *See Zirnsak v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014). Thus, the ALJ was entitled to rely upon the VE's testimony and Plaintiff's current attempt to raise these challenges will not serve as a basis to remand this matter.  *See  Paula F. v. Kijakazi*, No. 21-13196, 2023 WL 3815423, at *16 (D.N.J. June 5, 2023) (declining to remand the matter where the plaintiff's challenge to an alleged discrepancy between the vocational expert's testimony and the DOT listings was unexplored during the hearing and later raised by the plaintiff in challenging the

9

ALJ's ruling); *see also O'Neill v. Comm'r of Soc. Sec.*, No. 18-0698, 2019 WL 413539, at *9 (D.N.J. Jan. 31, 2019) (same).

However, even if the Court were to consider the merits of Plaintiff's step five challenge, that challenge would not provide a basis for remanding this action. During a VE examination, "an ALJ is required to (1) ask, on the record, whether the VE's testimony is consistent with the DOT, (2) 'elicit a reasonable explanation' where an inconsistency does appear, and (3) explain in its decision 'how the conflict was resolved.' " *Zirnsak v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014) (quoting *Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir. 2002)). The presence of inconsistencies is permissible if the ALJ's decision is otherwise supported by substantial evidence. *Id.* Furthermore, to support the step five determination, the ALJ is only required to identify a single job within the claimant's capacity that exists in significant numbers in the national economy. See *Rebecca L. v. Comm'r of Soc. Sec.*, 617 F. Supp. 3d 256, 272 (D.N.J. 2022) (citing *Penrose v. Comm'r of Soc. Sec.*, No. 20-00011, 2020 WL 7640585, at *7 (D.N.J. Dec. 23, 2020)); *see also Lippincott v. Comm'r of Social Sec.*, 982 F. Supp. 2d 358, 384 (D.N.J. 2013) (citing 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations)."); 20 C.F.R. § 416.966(b) (same)).

Here, the ALJ identified three jobs within Plaintiff's capacity that exists in significant numbers in the national economy: (1) document clerk; (2) envelope addressor; and (3) surveillance system monitor. (R. 28–29.) Plaintiff alleges that based on the VE's own testimony, the job descriptions for the identified roles are outdated. However, the outdated description only applied to the surveillance system monitor job, which VE Alberigi clarified that the role was no longer only limited to government employees. (R. 58–63.) To the extent that such minor inconsistency conflicts with the DOT, this Court finds any such error to be harmless. Because the ALJ

10

appropriately credited the VE's testimony regarding the other two jobs, the Court finds that substantial evidence supports the ALJ's determination at step five.

## IV. CONCLUSION

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

_____/s/ Susan D. Wigenton_____
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties